Paul ARGUELLO, Plaintiff
and Appellant,

v.

**INDUSTRIAL WOODWORKING
MACHINE CO., Defendant
and Appellee.**

No. 910046.

Supreme Court of Utah.

Sept. 21, 1992.

Martin W. Custen, James R. Hasenyager, Ogden, for plaintiff and appellant.

Douglas B. Thomas, Ogden, for defendant and appellee.

ZIMMERMAN, Justice:

Paul Arguello appeals from an order dismissing his complaint against Industrial Woodworking Machine Co. ("Industrial") for lack of personal jurisdiction. The issue presented is whether the trial court erred in holding that Industrial, a Texas company, lacked sufficient contacts with Utah to permit assertion of personal jurisdiction over it. *See* Utah Code Ann. § 78–27–24. We affirm.

We first note the standard of review. Where a pretrial jurisdictional decision has been made on documentary evidence only, an appeal from that decision presents only legal questions that are reviewed for correctness. *Cf. Anderson v. American Soc'y of Plastic and Reconstructive Surgeons*, 807 P.2d 825, 827 (Utah 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 276, 116 L.Ed.2d 228 (1991).

The facts are taken from the parties' pleadings. *See id.* Arguello relied on facts alleged in his unverified complaint for his assertion of jurisdiction. Industrial responded to the complaint with a motion to dismiss for lack of jurisdiction and a supporting affidavit setting forth its version of the jurisdictional facts. Arguello did not controvert the affidavit. Therefore, for purposes of this appeal, the facts asserted in the affidavit are taken as true and the facts recited in the complaint are considered only to the extent that they do not contradict the affidavit. *See id.; Pentecost v. Harward*, 699 P.2d 696, 698 (Utah 1985); *Roskelley & Co. v. Lerco Inc.*, 610 P.2d 1307, 1310 (Utah 1980).

In 1971, Industrial, a Texas company, sold a large, stationary finger jointing machine to Pickering Lumber Co. ("Pickering") in California. Prior to delivery, Industrial made numerous additions and modifications to the machine to suit Pickering's woodworking needs. Pickering paid sales tax on the purchase of the machine.

By 1982, the machine had made its way to Arguello's employer, Weathershield, Inc., in Logan, Utah. The record is silent as to the machine's ownership and location between its delivery to Pickering in 1971 and 1982. In July of 1982, Weathershield requested that Industrial send a service representative to examine the finger jointing machine and to consult with Weathershield as to how its efficiency could be increased.

Industrial sent a service representative to Utah. He was told that wood being worked in the machine would occasionally pop out, an occurrence that required the machine to be run at less than maximum speed. After inspecting the machine, the service representative noted that it had been modified since leaving Industrial's possession. He advised Weathershield how to correct the problem, but made no effort to fix it because Weathershield indicated that it would undertake any needed repairs or modifications. Industrial had no further contact with the machine.

In 1987, while working for Weathershield, Arguello allegedly injured his wrist as he used the machine. Arguello claims that he was harmed by an unreasonably dangerous condition in the machine, i.e., the tendency of wood to pop out of the machine while running, and alleges that the machine was defective both because it lacked guards to protect the operator from

the ejected wood and because it lacked a warning of that dangerous condition.

After his injury, Arguello filed an action against Industrial in a Utah district court and served Industrial in Texas. Industrial moved to dismiss the complaint for lack of personal jurisdiction. In support of its motion, Industrial filed an affidavit specifying its contacts with the machine and Utah. The district court granted Industrial's motion and dismissed Arguello's claims. Arguello appealed to the Utah Court of Appeals, which transferred the case to this court under Utah Rule of Appellate Procedure 44. Utah R.App.P. 44.

In support of his claim that the district court erred in refusing to take jurisdiction, Arguello advances two theories: first, that Industrial's contacts are sufficiently related to the specific harm suffered and made the subject of his action to give the court personal jurisdiction; second, and alternatively, that the sale of the machine in California placed it in the stream of commerce, which inevitably brought it to Utah, and that this establishes sufficient minimum contacts with Utah for jurisdiction to attach.

▮ Before considering Arguello's two theories, some background is warranted. Personal jurisdiction can be broken down into two categories. Either a court has general jurisdiction over a defendant or it has specific jurisdiction. *General* personal jurisdiction permits a court to exercise power over a defendant without regard to the subject of the claim asserted. For such jurisdiction to exist, the defendant must be conducting substantial and continuous local activity in the forum state. In contrast, *specific* personal jurisdiction gives a court power over a defendant only with respect to claims arising out of the particular activities of the defendant in the forum state. For such jurisdiction to exist, the defendant must have certain minimum local contacts. *See generally Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *Abbott G.M. Diesel, Inc. v. Piper Aircraft Corp.,* 578 P.2d 850, 853 n. 6 (Utah 1978) (quoting Kristine Strachan, *In Personam*

*Jurisdiction in Utah,* 1977 Utah L.Rev. 235, 253–54, 264). In the present case, it is clear that Industrial was not doing business in this state to such an extent that our courts would have general jurisdiction over it. Therefore, Arguello must show that grounds exist for specific personal jurisdiction.

▮ Generally, whether a state can exercise specific personal jurisdiction over a nonresident defendant is determined by two factors: the breadth of the forum state's jurisdictional statute and the due process limitations on jurisdiction imposed by the Fourteenth Amendment to the United States Constitution. *See Parry v. Ernst Home Center Corp.,* 779 P.2d 659, 661 (Utah 1989); *Bradford v. Nagle,* 763 P.2d 791, 793 (Utah 1988). If the relevant state statute does not permit jurisdiction, then the inquiry is ended; if it does, then the question is whether the statute's reach comports with due process. *Bradford,* 763 P.2d at 793 (quoting 2 James W. Moore, *Moore's Federal Practice* ¶ 4.41–1[4], at 4–335 to –336 (2d ed. 1988)).

The relevant provision of the Utah long-arm statute provides for personal jurisdiction over nonresidents as follows:

> Any person ... whether or not a citizen or resident of this state, who in person or through an agent does any of the following of the enumerated acts, submits himself [or herself] ... to the jurisdiction of the courts of this state as to any claim arising from:
>
> (1) The transaction of any business within this state;
>
> .   .   .   .   .
>
> (3) The causing of any injury within this state whether tortious or by breach of warranty.

Utah Code Ann. § 78–27–24. We assume that either subparagraph (1) or (3) of the long-arm statute will be satisfied if Utah's exercise of specific personal jurisdiction over Industrial satisfies due process. *See Parry,* 779 P.2d at 661; *Bradford,* 763 P.2d at 793; *cf. Synergetics v. Marathon Ranching Co.,* 701 P.2d 1106, 1110 (Utah

1985). Consequently, we proceed to the due process issue.

■ To exercise jurisdiction consistent with due process, the nonresident defendant must have "minimum contacts with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation omitted) (quoted in *Parry,* 779 P.2d at 662; *Synergetics,* 701 P.2d at 1110). These "minimum contacts" must be the basis for the plaintiff's claim. The minimum contacts inquiry focuses on "the relationship of the defendant, the forum, and the litigation to each other." *Parry,* 779 P.2d at 662; *Synergetics,* 701 P.2d at 1110; *Mallory Eng'g v. Ted R. Brown & Assoc.,* 618 P.2d 1004, 1007 (Utah) (citing *International Shoe,* 326 U.S. at 317, 66 S.Ct. at 158–59), *cert. denied sub nom. Valad Elec. Heating Corp. v. Ted R. Brown & Assoc.,* 449 U.S. 1029, 101 S.Ct. 602, 66 L.Ed.2d 492 (1980). The United States Supreme Court has suggested two modes of analyzing the question of whether minimum contacts are present: the "arising out of" test and the "stream of commerce" test. *See generally Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 108–13, 107 S.Ct. 1026, 1030–33, 94 L.Ed.2d 92 (1987) (opinion of O'Connor, J.); *id.* at 116–21, 107 S.Ct. at 1034–37 (opinion of Brennan, J.); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295–98, 100 S.Ct. 559, 566–68, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla,* 357 U.S. 235, 250–54, 78 S.Ct. 1228, 1237–40, 2 L.Ed.2d 1283 (1958); *International Shoe,* 326 U.S. at 319, 66 S.Ct. at 159–60. Arguello contends that one or both of these tests are satisfied. We first address the "arising out of" theory.

■ The "arising out of" principle is evidenced in *Synergetics,* 701 P.2d 1106, and *Roskelley,* 610 P.2d 1307. In *Synergetics,* the defendant's sole contact with Utah was the signing of a fraudulent contract within the state's boundaries. Because the claim against the defendant arose out of the con-

tract, we held that specific personal jurisdiction existed. 701 P.2d at 1110–11. In contrast, in *Roskelley* we held it improper to exercise jurisdiction over a Kentucky corporation that had sold equipment in Utah and then entered the state to oversee the installation of that equipment. We relied on the fact that the claim asserted in Utah against the company was unrelated to those contacts. 610 P.2d at 1309. These cases demonstrate that due process is not satisfied by the *quantity* of the contacts with the state, but "rather upon the *quality* and nature" of the minimum contacts and their relationship to the claim asserted. *International Shoe,* 326 U.S. at 319, 66 S.Ct. at 159–60 (emphasis added).

Arguello contends that Industrial's sending a service representative to Utah establishes sufficient minimum contacts for the assertion of specific personal jurisdiction. Industrial responds that its contacts in Utah are wholly unrelated to the cause of action asserted against it and therefore jurisdiction cannot exist. We agree. Arguello's claims do not arise out of Industrial's contacts in Utah. Arguello's negligence and products liability claims are based upon the alleged malfunctioning of the finger jointing machine. Industrial's contacts with Utah, on the other hand, are unrelated to the cause of the injury. The contacts Industrial has with Utah can be summarized as follows: It sent a representative to give advice to Weathershield about the operation of the machine in 1982, it sold parts to Utah residents for other machines, and it advertised the availability of parts for its machines in national trade publications that possibly reached Utah. The claims obviously do not arise out of Industrial's sales or advertisements. As for the representative's visit, the claim cannot be said to arise from it because the representative did not undertake to make any changes or repairs to the machine related to the problem that allegedly caused Arguello's injury. He only advised Weathershield that the machine had been modified after it left Industrial and how it could be fixed to operate more efficiently and safely. Weathershield did not ask for anything more, telling the representative that

it would undertake any needed repairs or modifications. This situation is analogous to that in *Roskelley,* where jurisdiction was not found despite the defendant's visit and the sale of products in Utah. Here, as in *Roskelley,* the contacts of the out-of-state defendant are unrelated to plaintiff's claims, and the claim cannot be said to "arise out of" the contacts with the state.

■■■ We now turn to Arguello's alternative theory of minimum contacts, "stream of commerce." Arguello contends that the sale of Industrial's machine to a California buyer placed the machine in the stream of commerce so as to establish sufficient minimum contacts with the place where it ultimately was found—Utah. In products liability cases, the United States Supreme Court has recognized the stream of commerce theory as being sufficient to establish minimum contacts regardless of the result of an "arising under" analysis. *See Asahi,* 480 U.S. at 108–13, 107 S.Ct. at 1030–33 (opinion of O'Connor, J.); *id.* at 116–21, 107 S.Ct. at 1034–37 (opinion of Brennan, J.); *World–Wide Volkswagen,* 444 U.S. at 295–98, 100 S.Ct. at 566–68. The basic theory of the stream of commerce analysis is one of foreseeability: One who puts a product into the stream of commerce in such a fashion as to reasonably foresee its sale in a certain jurisdiction cannot complain of having to defend against claims in that jurisdiction arising out of the product's presence there.

The stream of commerce theory is best delineated in *World–Wide Volkswagen.*[1] There, the plaintiffs were involved in a car accident in Oklahoma and brought a products liability action in Oklahoma against the New York wholesaler and dealer who sold them their car. The plaintiffs argued that the defendants had placed the car into the stream of commerce, that it was fore-

seeable that the car would be driven in Oklahoma, and that the assertion of personal jurisdiction in that state was therefore proper. *See* 444 U.S. at 286, 100 S.Ct. at 561.

■■■ The Court rejected that argument. It held that amenability to suit does not blindly "travel with the chattel" through the stream of commerce, but is limited by foreseeability. *Id.* at 296, 100 S.Ct. at 566–67.

> [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendant's conduct and connection with the forum state are such that he [or she] should reasonably anticipate being haled into court there.

*Id.* at 297, 100 S.Ct. at 567. A corporation can reasonably anticipate being haled into court in a state if it "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum [s]tate," *id.* at 298, 100 S.Ct. at 567, and "if the sale of [its] product ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other [s]tates," *id.* at 297, 100 S.Ct. at 567. Put simply, the defendant must have taken deliberate steps to serve the forum state market with the product that is the subject of the suit before being susceptible to jurisdiction in that state. "The stream of commerce refers not to unpredictable currents or eddies [in the market], but to the regular and anticipated flow of products from manufacture to distribution to retail sale." *Asahi,* 480 U.S. at 117, 107 S.Ct. at 1034 (opinion of Brennan, J.).

---

**1.** In *Parry,* the last decision from this court to address the stream of commerce theory, the court relied heavily on Justice O'Connor's plurality opinion in *Asahi.* That reliance has been criticized as narrowing the reach of the Utah long-arm statute contrary to the express legislative directive in section 78–27–12, Utah Code Ann. § 78–27–12, that jurisdiction be asserted over nonresident defendants to the full extent permitted by due process. *See* Marc Young,

Note, *Parry v. Ernst Home Center Corporation: The "Mauling" of Personal Jurisdiction Theory,* 1990 Utah L.Rev. 479, 500, 502; *see also* Anderson, 807 P.2d at 828 n. 1. *See generally DeMoss v. City Market, Inc.,* 762 F.Supp. 913, 918–19 (D.Utah 1991) (relying on *World–Wide Volkswagen* rather than *Asahi* because the *Asahi* court could not agree as to the proper stream of commerce analysis).

Returning to the present case, Arguello contends that personal jurisdiction is appropriate because Industrial placed the machine in the stream of commerce by its sale to Pickering in California and that it was foreseeable that the machine would be resold in Utah. Industrial responds that the machine never entered the stream of commerce because it was sold to an ultimate buyer and resale of the machine in Utah was wholly unforeseeable. We agree with Industrial. The facts are analogous to those in *World–Wide Volkswagen*. There, the Court found that the New York defendants could not have anticipated being haled into court in Oklahoma because they sold no cars in Oklahoma, they did not serve or seek to serve the Oklahoma market, they did not advertise in Oklahoma, and they had no salespersons in Oklahoma. 444 U.S. at 295, 100 S.Ct. at 566. Here, Industrial could not have reasonably anticipated being haled into court in Utah because it sold no finger jointing machines in Utah and it did not seek to serve the Utah market for finger jointing machines through either sales representatives or advertising. In addition, Utah accounts for 0.3 percent of Industrial's total sales, and these are almost exclusively sales of parts which are initiated by requests from Utah businesses. It was wholly unforeseeable that Industrial would be subject to a suit in Utah involving a finger jointing machine.

Other facts make this case even weaker than *World–Wide Volkswagen* for the exercise of personal jurisdiction. In that case, a car was the subject of the suit, and it was at least foreseeable that a car sold in New York might, at some point, be driven in Oklahoma. In the present case, however, the subject of the suit is a large, immobile jointing machine. Moreover, the conclusion that it was sold to an ultimate buyer is evidenced by the fact that Pickering, the initial purchaser, requested specialized modifications to the machine before delivery and paid sales tax, which strongly suggests that resale was not planned. Industrial never attempted to enter the machine into a stream of commerce that ran to Utah. The machine arrived in Utah due only to the unforeseeable sale by Pickering to Weathershield, not from any deliberate action by defendant.

We conclude that neither the "arising out of" theory nor the "stream of commerce" theory will support a finding of the minimum contacts necessary for assertion of jurisdiction over Industrial for the purposes of Arguello's claims. Because jurisdiction cannot be asserted in accordance with the due process clause, the district court's decision is affirmed.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.