2000 UT 64

**PHONE DIRECTORIES CO., INC.,**
Plaintiff and Appellant,

v.

**Walter HENDERSON, Defendant
and Appellee.**

No. 981728.

Supreme Court of Utah.

Aug. 15, 2000.

R. Stephen Marshall, Steve K. Gordon, Salt Lake City, for plaintiff.

Paul C. Drecksel, Mark R. Clements, Salt Lake City, for defendant.

DURHAM, Justice:

¶ 1 Phone Directories Company, Inc. ("PDC") sued Walter Henderson for breach of contract, breach of the implied covenant of good faith and fair dealing, and interference with economic relations. In response, Henderson filed a motion to dismiss for lack of personal jurisdiction or, alternatively, for failure to state a claim upon which relief could be granted. The trial court, finding that it lacked personal jurisdiction over Henderson, granted Henderson's motion to dismiss. We reverse and remand.

## STANDARD OF REVIEW

¶ 2 At issue in this appeal is the trial court's ruling on Henderson's pretrial motion to dismiss for lack of personal jurisdiction. Trial courts "may determine jurisdiction on affidavits alone, permit discovery, or hold an evidentiary hearing." *Anderson v. American Soc'y of Plastic and Reconstructive Surgeons*, 807 P.2d 825, 827 (Utah 1990) (approving procedures employed by federal trial courts when making pretrial determinations regarding personal jurisdiction as appropriate guidelines for Utah's trial courts). The record indicates that the trial court made its determination concerning personal jurisdiction based upon affidavits submitted by the parties. Thus, we review the trial court's decision for correctness. *See Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1121 (Utah 1992) ("Where a pretrial jurisdictional decision has been made on documentary evidence only, an appeal from that decision presents only legal questions that are reviewed for correctness.").

## FACTS

¶ 3 PDC is a Utah corporation with its principal place of business in Utah County, Utah.[1] PDC is in the business of publishing telephone directories. PDC employs sales representatives to contact businesses that may be interested in advertising in PDC's directories.

¶ 4 Henderson is a resident of Big Bear, California. Since 1972, he has resided in California and has filed tax returns and paid state income tax solely in California.

¶ 5 In the late summer or early fall of 1996, Henderson telephoned Marc Bingham, CEO of PDC, regarding the possibility of Henderson working as a PDC sales representative. During the conversation, Bingham found Henderson to be an attractive candidate for a PDC sales representative position and invited Henderson to come to PDC's offices in Orem, Utah. Henderson accepted Bingham's invitation and subsequently came to PDC's offices, where he met with Bingham and Linda Brunisholz, PDC's national sales manager, to discuss employment possibilities.

¶ 6 Several days later, Henderson telephoned Brunisholz at the PDC offices to continue negotiating his possible employment. During that call, Brunisholz told Henderson that PDC would hire him as a sales representative to canvass the Big Bear, California area. Henderson ultimately accepted the position.

¶ 7 As part of its normal hiring practice, PDC sent Henderson an Employee Representative Sales Agreement ("Agreement"), which Henderson was to sign as a condition of his employment. The Agreement contained a noncompetition clause and a forum selection/consent-to-jurisdiction clause.[2] Af-

---

1. The facts are drawn from the trial court's record, including the unverified complaint and the affidavits filed by Henderson and PDC in connection with Henderson's motion to dismiss. Because we review the trial court's decision for correctness, we follow the same procedures in determining whether the trial court had personal jurisdiction based only upon documentary evidence. Therefore, "[t]he plaintiff's factual alle-

gations are accepted as true unless specifically controverted by the defendant's affidavits or by depositions, but any disputes in the documentary evidence are resolved in the plaintiff's favor." *Anderson*, 807 P.2d at 827.

2. The forum selection/consent-to-jurisdiction clause stated:

ter Henderson expressed some concern with the scope of the noncompetition clause, Brunisholz agreed to modify it in the form of an addendum to the Agreement. Prior to signing the Agreement and the addendum, Henderson requested that Brunisholz make further modifications, but Brunisholz refused. Shortly thereafter, Henderson sent the Agreement and addendum, both signed, to Brunisholz in Utah.

¶ 8 Upon receiving the signed Agreement and addendum, Brunisholz instructed another PDC employee to provide Henderson with confidential information concerning existing and potential clients, which Henderson was to use in making sales. Subsequently, relations between PDC and Henderson broke down, and PDC requested that Henderson return all of the materials provided him. Henderson complied with this request.

¶ 9 In the late fall or early winter of 1997, PDC sales representatives in the Big Bear area informed Bingham that Henderson was contacting businesses in Big Bear in an attempt to have those businesses agree to advertise in a competing yellow-pages directory. In response, PDC instigated a lawsuit against Henderson in Utah, claiming breach of contract, breach of the implied covenant of good faith and fair dealing, and interference with economic relations. Henderson filed a motion to dismiss for lack of personal juris-

diction, or, in the alternative, for failure to state a claim upon which relief could be granted. PDC opposed the motion, arguing that the trial court had personal jurisdiction over Henderson pursuant to the forum selection/consent-to-jurisdiction clause contained in the fully executed Agreement.[3]

■ ¶ 10 The trial court granted Henderson's motion to dismiss for lack of personal jurisdiction.[4] In reaching this decision, the trial court reasoned that PDC must "make a prima facie showing of specific personal jurisdiction under the Utah long-arm statute [5] and due process clause." It then found that Henderson's "only contact with this state was to sign a contract in California with a Utah company that choose [sic] Utah as the forum." Based upon this finding, the trial court concluded that it lacked personal jurisdiction over Henderson because "[t]his type of contact does not arise from any of the enumerated acts listed in the Utah long[-]arm statute." [6]

## ANALYSIS

■ ¶ 11 This case presents a question of first impression, namely, what standard should be used to determine personal jurisdiction where the underlying contract con-

This agreement and any disputes relating thereto shall be construed under the laws of the State of Utah, and if and where any conflict of law arises, the laws of the State of Utah shall apply and shall be binding. Sales Representative agrees that he will submit any and all disputes he may have with Company to binding arbitration before a licensed alternative dispute resolution agency selected of Company's sole discretion, or in the alternative and solely at Company's discretion, shall submit to the jurisdiction and authority of the applicable Court of Law in the State of Utah.

3. PDC also filed a rule 56(f) motion and a motion to amend its complaint. However, the trial court denied those motions, stating that neither the additional discovery requested by PDC, nor the amended complaint, would provide the court with personal jurisdiction over Henderson.

4. The trial court did not reach Henderson's argument that PDC's claim should be dismissed for failing to state a claim upon which relief could be granted. On appeal, Henderson, in essence,

reasserts this argument stating that the trial court's dismissal can be affirmed on the alternative ground that PDC's claims are barred as a matter of law by applicable California law. Because the trial court did not reach this issue, affirming on this alternate ground would require us to examine, for the first time in this case, which state's law should govern. We decline to do so, and direct the trial court to address this issue should it arise on remand.

5. *See* Utah Code Ann. § 78–27–24 (Supp.1999).

6. Because *Anderson* requires trial courts to resolve all disputes in the documentary evidence in the plaintiff's favor when determining personal jurisdiction, *see Anderson*, 807 P.2d at 827, the trial court assumed that it had granted PDC's motion to amend its complaint and went on to analyze whether it had personal jurisdiction over the claims raised therein under Utah's long-arm statute. Ultimately, the court concluded that it lacked personal jurisdiction over these additional claims.

tains a forum selection/consent-to-jurisdiction clause.[7] Generally,

> [p]ersonal jurisdiction can be broken down into two categories. Either a court has general jurisdiction over a defendant or it has specific jurisdiction. *General* personal jurisdiction permits a court to exercise power over a defendant without regard to the subject of the claim asserted. For such jurisdiction to exist, the defendant must be conducting substantial and continuous local activity in the forum state. In contrast, *specific* personal jurisdiction gives a court power over a defendant only with respect to claims arising out of the particular activities of the defendant in the forum state. For such jurisdiction to exist, the defendant must have certain minimum local contacts.

*Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992). Because a forum selection/consent-to-jurisdiction clause does not create contacts with the forum state sufficient to establish general jurisdiction, we consider this court's jurisprudence regarding specific personal jurisdiction.

■ ¶ 12 Under Utah law, a three-part inquiry is used to determine specific personal jurisdiction:

> (1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a "nexus" must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process.

*Harnischfeger Eng'rs, Inc. v. Uniflo Conveyor, Inc.*, 883 F.Supp. 608, 612–13 (D.Utah 1995); *see also* Utah Code Ann. § 78–27–24 (Supp.1999) ("Any person ... who ... does any of the following enumerated acts, sub-

mits himself ... to the jurisdiction of the courts of this state as to any claim arising out of or related to [such acts]."). Acts implicating Utah under Utah's long-arm statute include:

(1) the transaction of any business within this state;

(2) contracting to supply services or goods in this state;

(3) the causing of any injury within this state whether tortious or by breach of warranty;

(4) the ownership, use, or possession of any real estate situated in this state;

(5) contracting to insure any person, property, or risk located within this state at the time of contracting;

(6) with respect to actions of divorce, separate maintenance, or child support, having resided, in the marital relationship, within this state notwithstanding subsequent departure from the state; or the commission in this state of the act giving rise to the claim, so long as that act is not a mere omission, failure to act, or occurrence over which the defendant had no control; or

(7) the commission of sexual intercourse within this state which gives rise to a paternity suit under Title 78, Chapter 45a, to determine paternity for the purpose of establishing responsibility for child support.

*Id.*

¶ 13 The trial court in this case analyzed whether it had personal jurisdiction over Henderson pursuant to the *Harnischfeger* three-part inquiry stated above. In particular, the trial court considered whether Henderson's contacts with Utah satisfied

---

7. We note that in *Prows v. Pinpoint Retail Systems, Inc.*, 868 P.2d 809 (Utah 1993), this court addressed the validity of a contractual forum selection/consent-to-jurisdiction clause. Although we ultimately concluded that enforcing the particular clause would be unjust because the plaintiff would practically be denied his day in court, *see id.* at 813, we adopted section 80 of the Second Restatement of Conflict of Laws which states: " 'The parties' agreement as to the place of the action will be given effect unless it is unfair or unreasonable,' " *id.* at 812 (quoting

Restatement (Second) of Conflict of Laws § 80 (Supp.1989)).

In the present case, we must decide what the personal jurisdiction standard is in cases involving forum selection/ consent-to-jurisdiction clauses. To remain consistent with *Prows*, the standard we announce today will insure that enforcement of such clauses will not be unfair or unreasonable. As such, this decision will fully comport with the general principle announced in *Prows*, and will offer specific guidance as to the particular issue raised in this case.

subsection (1), (2), or (3) of section 78–27–24. Ultimately, it concluded that Henderson's contacts did not satisfy these subsections and granted Henderson's motion to dismiss for lack of personal jurisdiction. While the trial court raised the question of whether a forum selection/consent-to-jurisdiction clause, by itself, could confer personal jurisdiction over a defendant, it did not answer this question, instead analyzing the personal jurisdiction question under the traditional inquiry.

■ ¶ 14 Although use of the *Harnischfeger* three-part inquiry to determine personal jurisdiction is generally appropriate, we conclude that a different inquiry should be made in cases involving contractual forum selection/consent-to-jurisdiction clauses.[8] In particular, we hold that, while a forum selection/consent-to-jurisdiction clause by itself is not sufficient to confer personal jurisdiction over a defendant as a matter of law, such clauses do create a presumption in favor of jurisdiction and will be upheld as fair and reasonable so long as there is a rational nexus between the forum selected and/or consented to, and either the parties to the contract or the transactions that are the subject matter of the contract. Although the rational nexus element does require *some* connection between Utah and either the parties to or the actions contemplated by the contract, it need not rise to the level required under section 78–27–24.

■ ¶ 15 This partial departure from the traditional three-part inquiry when the parties have contractually selected or consented to a forum has two bases. First, people are free to waive the requirement that a court must have personal jurisdiction over them before that court can adjudicate a case involving them. *See, e.g., National Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 315–16, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) (stating that "it is settled ... that parties to a contract may agree in advance to submit to the jurisdiction of a given court"); *Petrowski v. Hawkeye–Sec. Ins. Co.,* 350 U.S. 495, 495–96, 76 S.Ct. 490, 100 L.Ed. 639 (1956) (holding that parties who stipulated to personal jurisdiction waived any right to assert a lack of personal jurisdiction); *Curtis v. Curtis,* 789 P.2d 717, 726 (Utah Ct.App.1990) (stating that "defects in personal jurisdiction can be waived") (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (1969)). Second, people are generally free to bind themselves pursuant to any contract, barring such things as illegality of subject matter or legal incapacity. *See, e.g., Twin City Pipe Line Co. v. Harding Glass Co.,* 283 U.S. 353, 356, 51 S.Ct. 476, 75 L.Ed. 1112 (1931) ("The general rule is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts."); *Frailey v. McGarry,* 116 Utah 504, 211 P.2d 840, 847 (Utah 1949) (stating that "the law favors the right of men of full age and competent understanding to contract freely"). When combined, these two concepts support the conclusion that people can contractually agree to submit to the jurisdiction of a particular court, even if that court might not have independent personal jurisdiction over them under the *Harnischfeger* three-part inquiry.[9] The potential risks of expanded jurisdic-

---

**8.** Because both PDC and Henderson frame the personal jurisdiction issue in terms of whether the forum selection/consent-to-jurisdiction clause confers personal jurisdiction over Henderson, we do not analyze whether Henderson's contacts with Utah satisfy the *Harnischfeger* three-part test. Instead, we address the issue as raised by the parties, and focus upon ascertaining the standard that should be applied to determine whether personal jurisdiction exists when a contract containing a forum selection/consent-to-jurisdiction clause is involved.

**9.** In this respect, the United States Supreme Court has noted that

> because the personal jurisdiction requirement is a waivable right, there are a "variety of legal arrangements" by which a litigant may give "express or implied consent to the personal jurisdiction of the court." For example, particularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. Where such forum-selection provisions have been obtained through "freely negotiated" agreements and are not "unreasonable and unjust," their enforcement does not offend due process.

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted).

tion—particularly the waste of judicial resources—are addressed by the requirement of a rational nexus between this state and either the parties to or the subject matter of the contract. Moreover, as we stated in *Prows*, the traditional defenses allowing one to avoid an unfair or unreasonable contract, such as duress and fraud, are available to parties litigating the validity of a forum. *See Prows*, 868 P.2d at 812 n. 5.

¶ 16 Applying this standard to the present case, we conclude that the forum selection/consent-to-jurisdiction clause in the parties' contract, specifying Utah as the appropriate jurisdiction to resolve claims under the contract, creates a rebuttable presumption that the trial court has personal jurisdiction over Henderson. In addition, the record establishes the necessary rational nexus: (1) PDC is a Utah-based company; (2) PDC has its principal place of business in Utah; (3) Henderson telephoned PDC's CEO in Utah requesting employment; (4) Henderson visited PDC's offices in Utah to negotiate the terms of his employment; (5) Henderson telephoned PDC's offices in Utah to continue negotiating for employment; and (6) Henderson mailed the Agreement and addendum to PDC's Utah offices.

¶ 17 Thus, we hold that the forum selection/consent-to-jurisdiction clause is fair and reasonable, and that the trial court has personal jurisdiction over Henderson. We therefore reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion. Moreover, in light of the effect our decision may have on the trial court's rulings on PDC's rule 56(f) motion and PDC's motion to amend its complaint, we vacate those rulings.

¶ 18 Judge BENCH concurs in Justice DURHAM's opinion.

¶ 19 Having disqualified himself, Justice DURRANT did not participate herein; Court of Appeals Judge, RUSSELL W. BENCH, sat.

HOWE, Chief Justice, concurring in the result:

¶ 20 I concur in the result. The issue in this case as to the enforceability of a forum selection clause was decided by this court in *Prows v. Pinpoint Retail Systems, Inc.*, 868 P.2d 809 (Utah 1993). In that case, we adopted section 80 of the Second Restatement of Conflict of Laws, which provides that "the parties' agreement as to the place of the action will be given effect unless it is unfair or unreasonable." We stated that under this section, a plaintiff who brings an action in violation of a choice of forum provision bears the burden of proving that enforcing the clause is unfair or unreasonable. In that case, the forum selection clause provided that "all legal proceedings relating to the subject matter of this Agreement shall be maintained in courts sitting in the borough of Manhattan, in the city of New York." We held that that provision was unfair and unreasonable because none of the parties had any connection with New York. A Utah plaintiff was bringing suit against a Utah defendant and a Canadian defendant. The agreement sued upon was signed in Utah, was to be performed in Utah, and the alleged breach and tortious conduct occurred here. In other words, all relevant contacts occurred in Utah, and as a consequence, we held Utah was the only state with an interest in the action.

¶ 21 In the instant case, I would enforce the forum selection clause because it has not been shown to be unfair or unreasonable. As set out in the opinion of Justice Durham, the parties and the contract have a significant nexus to Utah.

¶ 22 I concur that the consent to jurisdiction clause in this case is enforceable for the reasons stated in Justice Durham's opinion.

WILKINS, Justice, concurring in the result:

¶ 23 I concur in the result reached by my colleagues. However, I would reverse the trial court on the basis of jurisdiction afforded by application of the Utah long-arm statute alone. Analysis of the forum selection/consent-to-jurisdiction language of the contract between the parties is both unnecessary and, in my opinion, potentially misleading for other litigants and courts.

¶ 24 The relevant portion of Utah's long-arm statute provides:

Any person ... whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself ... to the jurisdiction of the courts of this state as to any claim arising from:

(1) the transaction of any business within this state....

Utah Code Ann. § 78–27–24 (1996).

¶ 25 We have repeatedly held that the long-arm statute must be " 'extended to the fullest extent allowed by due process of law.' " *Starways, Inc. v. Curry,* 1999 UT 50 ¶ 7, 980 P.2d 204 (quoting *Synergetics v. Marathon Ranching Co.,* 701 P.2d 1106, 1110 (Utah 1985)). The undisputed facts here support such an application. Henderson called PDC at PDC's Utah offices to initiate negotiation of the contract. He then visited PDC's Utah office to negotiate the terms of the contract, called PDC's Utah offices again to complete the negotiations, and sent the executed agreement to PDC in Utah. The suit arises from a dispute over the meaning and terms of the contract resulting from these negotiations. In my opinion, these contacts are enough to constitute the "transaction of any business within this state" as contemplated by our long-arm statute. All that remains to be evaluated is whether holding Henderson subject to Utah's jurisdiction accords with due process.

¶ 26 Due process requires that the defendant has had "minimum contacts with [Utah] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation omitted). We look to the " 'relationship of the defendant, the forum, and the litigation to each other.' " *Parry v. Ernst Home Ctr. Corp.,* 779 P.2d 659, 662 (Utah 1989) (quoting *Synergetics,* 701 P.2d at 1110). Here, the controversy arises directly from the contract negotiations and the terms of the agreement created by Henderson's acts in Utah. I cannot see how the interests of fair play and substantial justice are compromised by requiring the defense of the action in Utah courts.

¶ 27 Standing alone, Henderson's contacts with PDC in Utah regarding the contract giving rise to the litigation are sufficient to confer personal jurisdiction over Henderson. Discussion of a presumption relating to the forum selection/consent-to-jurisdiction clause adds nothing in this particular case. In fact, discussing it in connection with this case may give the false impression that somehow it does make a difference. As a result, I would save evaluation of the legal impact of the forum selection/consent-to-jurisdiction contractual clause for a case when our consideration will have real consequences and be less likely to muddy the waters.

¶ 28 I would reverse and remand to the trial court on the basis of jurisdiction premised on simple application of the long-arm statute.

¶ 29 Associate Chief Justice RUSSON concurs in Justice WILKINS' opinion.