842

■ PLYMOUTH ROCK FUEL CORP., Appellant-Respondent, v LEUCADIA, INC., Formerly Known as JAMES TALCOTT, INC., Respondent-Appellant. — In an action to recover damages for breach of contract, plaintiff appeals from so much of an order of the Supreme Court, Kings County (Vaccaro, J.), dated August 3, 1982, as denied its motion for summary judgment and defendant cross-appeals from so much of the same order as denied its cross motion for partial summary judgment dismissing the complaint and for a severance of the counterclaims. ¶ Order modified, on the law, by deleting the provision denying that branch of plaintiff's motion which sought summary judgment as to the issue of liability for fuel deliveries and substituting therefor a provision granting that branch of the motion. As so modified, order affirmed, with costs to plaintiff, and matter remitted to the Supreme Court, Kings County, for further proceedings consistent herewith. ¶ Plymouth Rock Fuel Corporation (Plymouth Rock) brought this action against Leucadia, Inc., formerly known as James Talcott, Inc. (Talcott), to recover the principal sum of $18,105.38, allegedly representing the price of heating oil delivered and service repair calls made to three buildings (the buildings) located in New York City and owned and operated by Isaac Silverman (Silverman). ¶ The undisputed facts establish that Talcott was a second mortgagee of the buildings. Harry Scharaga, Plymouth Rock's president, testified at an examination before trial that in January, 1975, Silverman's manager told him that an order for fuel would be placed by Silverman and his agents and that although Silverman should be sent the invoices, they would be forwarded to Talcott for payment. Scharaga knew Talcott to be the second mortgagee, and thus agreed to this arrangement. ¶ Talcott paid the bills for nearly three years, but ceased to do so upon sending Plymouth Rock a letter dated December 27, 1977, which indicated in pertinent part that: ¶ "Newmark & Company Real Estate, Inc. has been appointed exclusive management agents for the above listed real estate properties as of December 15, 1977. ¶ "In the past all contracts, work orders, supply invoices, service contracts, etc. requisitioned or ordered by Isaac Silverman's office have been honored and paid for by James Talcott, Inc. ¶ "Effective immediately, all payments for requisitions, purchase orders, etc. on the above mentioned properties will become the responsibility of Newmark & Company and must be authorized by them". ¶ Talcott's mortgage on Silverman's property contains an assignment of rent clause. About 10 years ago, Silverman assigned to Talcott all of the rents and profits derived from the operation of the property, following Silverman's default on a mortgage loan, and all tenants in the buildings have paid rent directly to Talcott. Although Silverman and his employees did the day-to-day work of managing the building, they were in constant communication with Talcott, and all of their expenditures have been subject to Talcott's approval. Talcott has drawn all checks and made all disbursements on account of expenses incurred in the operation of the properties and has even paid Silverman's payroll account. ¶ The pleadings, liberally read, allege that while Talcott never literally took possession, it acquired the status of a mortgagee in possession by making Silverman its agent (see Marks, Maloney and Paperno, Mortgages and Mortgage Foreclosure in New York, § 330). When, as here, the facts are not disputed, the question of agency should be resolved by the court (see Hedeman v Fairbanks, Morse & Co., 286 NY 240, 248). ¶ The circumstances set forth indicate to this court that due to the degree of control exercised by Talcott over Silverman's operation, Silverman became Talcott's agent for the purpose of ordering fuel. Talcott is thus liable for the fuel delivered to the buildings prior to plaintiff's receipt of its December 27, 1977 letter (see Restatement, Agency 2d, § 14 O). It is well settled that a principal is liable on contracts entered into on its behalf by an authorized agent (3 NY Jur 2d, Agency, § 247). ¶ Nor does the Statute of Frauds bar

Plymouth Rock's recovery. Subdivision (3) of section 2-201 of the Uniform Commercial Code provides that "A contract which does not satisfy the [writing] requirements of subsection (1) but which is valid in other respects is enforceable * * * (c) with respect to goods * * * which have been received and accepted". It is not necessary that such receipt and acceptance "be by the vendee in person; it may be by his agent, acting under either a general or special authority" (*Outwater v Dodge,* 6 Wend 397, 402; see, also, *Strelsin v Central Trust Co.,* 164 Misc 702). As the fuel was received and accepted by Talcott's agent (Silverman), the Statute of Frauds requirements have been met. ¶ We further note that assuming the applicability of the Statute of Frauds provision regarding a promise to answer for the debt of another (General Obligations Law, § 5-701, subd a, par 2), the December 27, 1977 letter satisfied its requirements (see *Cohon & Co. v Russell,* 23 NY2d 569). ¶ Finally, we note that Talcott's counterclaims to recover moneys paid by Talcott for fuel oil delivered to Silverman's home under certain contracts do not preclude the granting of partial summary judgment against Talcott for fuel delivered to the buildings under other contracts (CPLR 3212, subd [e]; see *Stigwood Organisation v Devon Co.,* 44 NY2d 922). Titone, J. P., O'Connor, Brown and Eiber, JJ., concur.