2002 UT App 251

**Joseph MECHAM, Plaintiff and Appellant,**

v.

**CONSOLIDATED OIL & TRANSPORTATION, INC., a Colorado corporation; and Chase Manhattan Bank, a New York corporation, Defendants and Appellees.**

No. 20010041–CA.

Court of Appeals of Utah.

July 26, 2002.

Wayne A. Freestone, Parker, Freestone & Angerhofer, PC, Sandy, for Appellant.

Clark B. Allred and Clark A. McClellan, McKeachnie, Allred, McClellan & Trotter, Roosevelt, and Barbara L. Maw, Salt Lake City, for Appellees.

Before Judges JACKSON, P.J., BILLINGS, Associate P.J., and BENCH, J.

## OPINION

JACKSON, Presiding Judge:

### INTRODUCTION

¶ 1 Appellant Joseph Mecham (Mecham) appeals the district court's grant of summary judgment to Chase Manhattan Bank (Chase), a lender and secured creditor of Landmark Petroleum, Inc. (Borrower). He also appeals the district court's Order that dismissed his claims against a Colorado corporation, Consolidated Oil & Transportation, Inc. (Consolidated), whom Mecham alleges was the owner, co-owner, operator or co-operator of equipment or property on which he was injured.

¶ 2 Judges Jackson and Billings affirm the district court's grant of summary judgment in favor of Chase. We unanimously affirm

the conclusion that the district court could not exercise general jurisdiction over Consolidated. Judges Billings and Bench reverse the district court's conclusion that it could not exercise specific jurisdiction over Consolidated, with Judge Jackson dissenting in section II(B) of the main opinion.

## BACKGROUND

¶ 3 In 1994 and 1995, Mecham was employed by Adler Hot Oil Service (Adler) as a hot oil truck driver. In September of 1994 and February of 1995, Shirley Hebert, on behalf of Consolidated, telephoned Adler, contracting on each occasion with Adler for the performance of hot oil services.[1] Mecham was injured while performing the February contract. He brought a suit for, inter alia, negligence against Consolidated and Borrower. Mecham describes both companies as owners, co-owners, operators, or co-operators "of certain portions of land[,] petroleum products[, or] storage tanks on which the incident causing [Mecham's] injuries occurred." He also sued Chase, a secured creditor of Borrower, alleging that Chase exercised sufficient control over Borrower as to be considered its principal, and was thus responsible for Borrower's actions.

¶ 4 In 1994, Chase and Borrower agreed that the refinery where Mecham was injured should be closed, and that Borrower's assets would either be sold or maintained for later disposal. They also agreed to the use of two bank accounts—one for the proceeds of the sale of assets, and one to serve as an expense account for the sale and maintenance of Borrower's assets. Chase had exclusive access to the sales proceeds account. Chase insisted that the plant manager, Richard Means, an employee of the refinery, continue to be employed at the refinery to maintain the assets pending their disposal. He was to be paid out of the expense account.

¶ 5 Also, Chase was required to be informed of any sale greater than $250,000 and had the right to object to that sale. If Chase objected, Chase's accounting department would resolve the dispute. In addition, Borrower was required to have monthly meetings with Chase to discuss projected expenses. Chase had the power to approve or disapprove of expenses greater than $2,500. If a disagreement arose, then the average of the previous two months' expenses was used.

¶ 6 The district court granted summary judgment to Chase, concluding that Chase was not a principal of Borrower. It also granted Consolidated's motion to dismiss, concluding that it could exercise neither general nor specific personal jurisdiction over Consolidated. Mecham appeals both the grant of summary judgment and the grant of Consolidated's motion to dismiss.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 7 Mecham first appeals the district court's grant of summary judgment to Chase pursuant to Rule 56 of the Utah Rules of Civil Procedure. "Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Jones v. ERA Brokers Consol.*, 2000 UT 61, ¶ 8, 6 P.3d 1129; *see also* Utah R. Civ. P. 56(c). "Because entitlement to summary judgment is a question of law, we accord no deference to the trial court's resolution of the legal issues presented." *K & T, Inc. v. Koroulis*, 888 P.2d 623, 627 (Utah 1994). " ' "We determine only whether the trial court erred in applying the governing law and whether the trial court correctly held that there were no disputed issues of material fact." ' " *Berenda v. Langford*, 914 P.2d 45, 50 (Utah 1996) (citations omitted).

■ ¶ 8 Mecham challenges the district court's determination that no agency relationship existed between Chase and Borrower. He argues that "the trial court err[ed] in finding that there was no genuine issue of material fact as to whether [Chase] was a principal/agent of [Borrower] and that [Chase] was entitled to judgment as a matter of law." Other than this ultimate determina-

1. Other than these contracts, Consolidated's contacts with Utah are completely comprised of (1) "occasional telephone calls and electronic communications to transact spot purchases of product that is then shipped out of Utah," and (2) any potential contact arising out of its informational website, which requests visitors to contact Consolidated.

tion regarding the existence of an agency relationship, Mecham does not allege that any issues of material fact are in dispute. Normally "the question of whether an agency relationship exists is one of fact, which we review for an abuse of discretion." *Valcarce v. Fitzgerald,* 961 P.2d 305, 314 (Utah 1998). However, "[w]here the evidence as to the agent's authority is undisputed, or different reasonable logical inferences may not be drawn therefrom, [this] question is one of law." 3 Am.Jur.2d *Agency* § 373, at 891–92 (2000). The underlying evidence as to whether Borrower was Chase's agent is undisputed. Thus, the district court's determination that no agency relationship existed is a legal conclusion, which we review for correctness. *See id.* Accordingly, because Mecham disputes no issues of material fact, we conclude that the district court "correctly held that there were no disputed issues of material fact," and "[w]e determine only whether the trial court erred in applying the governing law" to its agency determination. *Berenda,* 914 P.2d at 50 (quotations and citations omitted).

¶ 9 Next, Mecham appeals the district court's Order, which dismissed his claims against Consolidated. Mecham challenges the district court's conclusions that it could exercise neither general nor specific personal jurisdiction over Consolidated. Because the "pretrial jurisdictional decision [was] made on documentary evidence only, [this] appeal from that decision presents only legal questions that are reviewed for correctness." *Arguello v. Indus. Woodworking Mach. Co.,* 838 P.2d 1120, 1121 (Utah 1992).

## ANALYSIS

### I. Appeal of Summary Judgment to Chase

¶ 10 In his memorandum in opposition to Chase's Motion for Summary Judgment, and

on appeal, Mecham cites section 14(O) of the Restatement (Second) of Agency to support his theory that Chase became Borrower's principal, and is thus liable for Borrower's negligent acts. This section of the Restatement provides, "A creditor who assumes control of his debtor's business for the mutual benefit of himself and his debtor, may become a principal, with liability for the acts and transactions of the debtor in connection with the business." *Id.*[2] Because a secured creditor may become its debtor's principal "either in person or through an agent," under this section, Restatement (Second) of Agency § 14(O) cmt. a, Mecham argued below that Chase became Borrower's principal both in person and through Means, whom Mecham alleges is Chase's agent. He thus argued that Chase is responsible for his injuries, which he alleges are the result of Borrower's negligence.

¶ 11 However, the district court rejected Mecham's agency argument, concluding that no agency relationship existed between Chase and Borrower because (1) Means was not Chase's agent, so "having Means on-site to oversee the sale did not establish an agency relationship unless Chase exercised some actual control," which it "did not," and (2) it "did not find anything unusual about Chase's position [as a lender or secured creditor]," and "that the actions of Chase were appropriate and did not exceed its position as lienholder." It further reasoned that there were "no allegation[s] or evidence that Chase took part in any management of the company or had any input as to how the sale of assets was performed." Mecham challenges both conclusions.

### A. Chase's Relationship with Means

¶ 12 Because we affirm the district court's conclusion that Means was not

**2.** The comment accompanying section 14(O) states:

A security holder who merely exercises a veto power over the business acts of his debtor by preventing purchases or sales above specified amounts does not thereby become a principal. However, if he takes over the management of the debtor's business either in person or through an agent, and directs what contracts may or may not be made, he becomes a

principal, liable as any principal for the obligations incurred thereafter in the normal course of business by the debtor who has now become his general agent. The point at which the creditor becomes a principal is that at which he assumes de facto control over the conduct of his debtor, whatever the terms of the formal contract with his debtor may be.
Restatement (Second) of Agency § 14(O) cmt. a (1958).

Chase's agent, we need not address Mecham's argument under Restatement (Second) of Agency § 14(O), that Chase's relationship with Means created an agency relationship between Chase and Borrower.

■ ¶ 13 In support of his argument that Means became Chase's agent, Mecham correctly asserts that "[a]gency is 'the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' " *Wardley Corp. v. Welsh,* 962 P.2d 86, 89 (Utah Ct.App.1998) (citation omitted). However,

> for [Mecham] to show [Means] was [Chase's] agent, he must [thus] prove that (1) [Chase] manifested that [Means] could act for [it], (2) [Means] accepted the proposed undertaking, and (3) both [Chase] and [Means] understood that [Chase] was to be in charge of the undertaking. In other words, "an agency is created and authority is actually conferred very much as a contract is made": a meeting of the minds must exist between the parties. Moreover, and critical in this case, "[a]n agency relationship can arise only at the will and by the act of the principal."

*Id.* (last alteration in original) (citations omitted). As a result, "[t]hese principles doom [Mecham's] arguments." *Id.* To meet his burden, Mecham alleges only that (1) Chase insisted that Means remain employed at the refinery to manage the maintenance of Borrower's assets, and (2) Means's salary was paid out of the approved monthly expenses. We do not agree that these two facts alone are sufficient to establish the necessary three criteria. Accordingly, this argument fails, and the district court correctly concluded that Means was not Chase's agent. As a result, we address Mecham's remaining argument that Chase effectively took over the management of Borrower in person.

**B. Chase's Relationship with Borrower**

■ ¶ 14 Mecham offers little, if any, legal analysis to support his challenge to the trial court's conclusion that Chase could not be said to have taken over the management of Borrower and was not Borrower's principal. Mecham's legal argument is based solely on the Restatement (Second) of Agency § 14(O) and two cases that apply this section of the Restatement to dissimilar circumstances.[3] Moreover, he states the following facts as evidence that Chase exercised the necessary degree of control over Borrower, but he fails to apply any law or meaningful analysis to them: (1) Chase was authorized to agree or disagree over monthly expenses of preserving the assets—if a disagreement occurred, the average of the two previous months' expenses was used; (2) Chase had the power to agree or disagree over the sale of the secured assets—if a dispute arose, it was settled by Chase's accounting department; (3) Chase needed to approve any sale of assets greater than $250,000; and (4) Chase eventually became a shareholder of Borrower.

¶ 15 Mecham's brief contains virtually no legal analysis regarding this argument. His reliance on Restatement (Second) of Agency § 14(O), is essentially an argument for lender liability. *See Peoples Fed. Sav. & Loan Ass'n v. Myrtle Beach Golf & Yacht Club,* 310 S.C. 132, 425 S.E.2d 764, 773 (Ct.App. 1992) ("The Restatement (Second) of Agency § 14(O) (1958) supports the concept of lender liability under the agency theory where the lender takes control of its borrower."); Frances E. Freund, Note, *Lender Liability: A Survey of Common–Law Theories,* 42 Vand. L.Rev. 855, 856–867 & n. 75 (1989); *see generally,* J. Dennis Hynes, *Lender Liability: The Dilemma of the Controlling Creditor,* 58 Tenn. L.Rev. 635 (Summer 1991) (analyzing the Restatement (Second) of Agency § 14(O) (1958)).

¶ 16 We know of no jurisdiction that has applied lender liability in a personal injury setting, as Mecham attempts here. *Cf.* 4–37

---

3. *See Plymouth Rock Fuel Corp. v. Leucadia, Inc.,* 100 A.D.2d 842, 474 N.Y.S.2d 79 (1984) (citing Restatement (Second) of Agency § 14(O) and holding mortgagee liable on contractual claims against mortgagor because mortgagee exercised the necessary degree of control to become mortgagor's principal); *Save Way Oil Company v. Mehlman,* 115 A.D.2d 721, 496 N.Y.S.2d 537 (1985) (relying on Restatement (Second) of Agency § 14(O) to hold there was a material issue of fact as to whether mortgagee became liable on contractual claims against mortgagor).

Joseph D. Zamore, *Business Torts* §§ 37.01, 37.03 (Matthew Bender 2001) (explaining various settings under which lender liability has been applied); Freund, 42 Vand. L.Rev. at 856–867 & n. 75 (same); Hynes, 58 Tenn. L.Rev. 635 (same); Restatement (Second) of Agency § 14(O) (stating lender liability may apply to "liability for the acts and transactions of the debtor *in connection with the business*" (emphasis added)); Restatement (Second) of Agency § 14(O) cmt. a (stating when a creditor "takes over the management of the debtor's business . . . and directs what *contracts* may or may not be made, he becomes a principal, liable as any principal for the obligations incurred thereafter *in the normal course of business* by the debtor who has now become his general agent." (Emphasis added)). We decline to do so today. Indeed, we need not address this issue because even if we held that lender liability could be applied in this manner, Mecham's negligence argument based on lender liability fails on the merits.

¶ 17 In *DeBry v. Valley Mortgage Co.*, 835 P.2d 1000, 1006 (Utah Ct.App.1992), we set forth the principles under which a lender liability argument for negligence may succeed in Utah.[4] "[L]ender liability for negligence to a party not in privity, will not attach unless there are unusual circumstances that exceed normal lending operations. A lending institution which acts in the normal manner in carrying out its lending activities owes no duty to unrelated parties." *Id.* Mecham does not allege that any of the facts he listed constitute "unusual circumstances that exceed[ed] normal lending operations."[5] *Id.* Nor does he provide any legal analysis that would support such an assertion. Mecham "argues that if Chase had the power to approve or disapprove of the monthly expenses, it necessarily had control of the day to day operations." However, he

provides no legal support for this conclusion. Further, his assertion that because of the above-listed facts "Chase had complete control over the refinery," is not an issue of fact, but "is actually a conclusion, which we may disregard." *Id.* at 1007. Thus, we cannot say that the district court erred in concluding that Chase did not exercise such a large degree of control[6] as to establish a principal-agent relationship. Accordingly, we affirm the district court's grant of summary judgment to Chase.

## II. District Court's Grant of Consolidated's Motion to Dismiss

### A. General Jurisdiction

¶ 18 We next address Mecham's challenge to the district court's conclusions that it could not exercise either general or specific personal jurisdiction over Consolidated, a Colorado corporation. We first discuss general jurisdiction. Our supreme court has stated that "[f]or [general] jurisdiction to exist, the defendant must be conducting substantial and continuous local activity in the forum state." *Arguello v. Indus. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992). To meet this requirement, Mecham alleges that (1) Consolidated engages in "occasional telephone calls and electronic communications to transact spot purchases of product that is then shipped out of Utah," and (2) it maintains an informational website that requests visitors to contact it. We need not address whether maintenance of a website sufficiently meets the requirement of "substantial and continuous local activity in the forum state," *Id.* at 1122, because Mecham does not allege that Consolidated had *any* contact with Utah through use of the

4.  Thus, we analyze Mecham's argument under *DeBry,* and need not address the applicability of the Restatement (Second) of Agency § 14(O).

5.  Moreover, comment A to the Restatement (Second) of Agency § 14(O), which Mecham cites for legal support, appears to contradict his assertion that facts he lists to demonstrate the necessary degree of control amount to establishing a principal-agent relationship: "A security holder who merely exercises a veto power over the business

acts of his debtor by preventing purchases or sales above specified amounts does not thereby become a principal." Restatement (Second) of Agency § 14(O) cmt. a.

6.  *See also* 4–37 Joseph D. Zamore, *Business Torts* §§ 37.02[3] (Matthew Bender 2001) (explaining what factors courts have considered to determine if a lender's control is excessive).

website.[7] Thus, we only consider whether occasional telephone calls, electronic communications, and spot purchases are sufficient to confer general jurisdiction upon a Utah district court.

¶ 19 We do not agree that "occasional telephone calls and electronic communications to transact spot purchases" constitute substantial and continuous contact such that it would be reasonable "for [Consolidated] to be expected to be '[haled] into court' in Utah."[8] *Buddensick v. Stateline Hotel, Inc.,* 972 P.2d 928, 931 (Utah Ct.App.1998) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)). Thus, the district court correctly concluded that it did not have general jurisdiction over Consolidated.

### B. Specific Jurisdiction

¶ 20 I respectfully dissent from my colleagues regarding specific jurisdiction, and would affirm the district court's conclusion that it could not exercise specific jurisdiction over Consolidated.

Under Utah law, a three-part inquiry is used to determine specific personal jurisdiction: "(1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute;[9] (2) a 'nexus' must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process."

*Phone Directories Co. v. Henderson,* 2000 UT 64,¶ 12, 8 P.3d 256 (citation omitted). Neither party argues that Consolidated's " 'acts or contacts' " fail to " 'implicate[ ] Utah under the Utah long-arm statute.' " *Id.* (citation omitted). Thus, I address the "nexus" prong.

¶ 21 Mecham challenges the district court's conclusion that "[t]here is not a sufficient nexus between the injury and the contacts of [Consolidated] in the state of Utah to give the court jurisdiction." He argues there is a sufficient nexus between his negligence claim and Consolidated's acts or contacts because he "was injured when he was performing the contract.... Thus, the injury arose out of the contract." However, to establish the required nexus, he must show that Consolidated's contacts with Utah, in this case a contract, was the basis for his *negligence claim. See Arguello,* 838 P.2d at 1123. Because his injury arises from negligence occurring while a contract was being performed, his injury cannot be said to have arisen out of the contract. Thus, I would conclude that there is no nexus between Mecham's negligence

---

7. We note that prior to the district court's ruling, counsel for Mecham stated, "I can flip on my computer, pull up a site. Everybody in Utah can pull up a site on their computer from Consolidated.... Now—but that in and of itself is not enough. Just pulling up the site that's not a presence in Utah because that would be similar to just an advertisement." However, the only Internet contact Mecham alleges that Consolidated had with Utah appears unrelated to Consolidated's website.

8. In *Buddensick,* the court considered whether the corporate defendant is: (1) engaged in business in this state; (2) licensed to do business in this state; (3) owning, leasing, or controlling property (real or personal) or assets in this state; (4) maintaining employees, offices, agents, or bank accounts in this state; (5) present in that shareholders reside in this state; (6) maintaining phone or fax listings within this state; (7) advertising or soliciting business in this state; (8) traveling to this state by way of salespersons, etc.; (9) paying taxes in this state; (10) visiting potential customers in this state; (11) recruiting employees in this state; and (12) generating a substantial percentage of its national sales through revenue generated from in—state customers. *Nga Tuyet Thi Ho v. Jim's Enters. Inc.,* 2001 UT 63,¶ 8 n. 7, 29 P.3d 633.

9. Acts implicating Utah under Utah's long-arm statute include, [inter alia,]:
   "(1) the transaction of any business within this state;
   (2) contracting to supply services or goods in this state;
   (3) the causing of any injury within this state whether tortious or by breach of warranty;
   (4) the ownership, use, or possession of any real estate situated in this state;
   (5) contracting to insure any person, property, or risk located within this state at the time of contracting...."
   *Phone Directories Co. v. Henderson,* 2000 UT 64,¶ 12, 8 P.3d 256 (quoting Utah Code Ann. § 78–27–24 (Supp.1999)) ("Any person ... who ... does any of the following enumerated acts, submits himself ... to the jurisdiction of the courts of this state as to any claim arising out of or related to [such acts]." (Alterations in original.)).

claims and Consolidated's acts or contacts with Utah. *See Henderson*, 2000 UT 64 at ¶ 12, 8 P.3d 256; *Arguello*, 838 P.2d at .1123. Accordingly, I believe the district court correctly concluded that it could not exercise personal jurisdiction over Consolidated, and would affirm its Order dismissing Consolidated.

### CONCLUSION

¶ 22 The trial court correctly concluded that Chase had not become Borrower's principal and that it does not have general jurisdiction over Consolidated. However, for the reasons set forth in my colleagues' separate opinion below, the trial court's conclusion that it could not exercise specific jurisdiction over Consolidated is reversed and its Order dismissing Consolidated is also reversed.

BILLINGS, Associate P.J.

¶ 23 I concur in the main opinion, except as to section II(B). I concur in Judge BENCH'S separate opinion as to the issue of specific jurisdiction.

BENCH, Judge (concurring in part and dissenting in part):

¶ 24 I concur in the conclusion that Consolidated has not conducted substantial and continuous activity in Utah so as to expose itself to general jurisdiction in this state. I disagree, however, with the lead opinion's analysis of specific jurisdiction. If our long-arm statute applies, and the lead opinion concedes that it does, then the nexus is certainly there. As explained in the lead opinion, Consolidated called Mecham's employer in Utah and contracted for the performance of hot oil services. While performing those services, Mecham was injured in Colorado. The nexus of the injury to the contact with the forum state is therefore quite clear. *See Phone Directories Co. v. Henderson*, 2000 UT 64,¶ 12, 8 P.3d 256.

¶ 25 Because of the nature of Consolidated's contacts with Utah, this case differs from the case relied on by the lead opinion, *Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120 (Utah 1992). In *Arguello*, the defendant's contacts with Utah were "sales or advertisements." *Id.* at 1123. The supreme court determined that Arguello's injury did not arise out of the defendant's contacts with Utah, because the defendant's representative only advised Arguello's employer on how the machine that caused Arguello's injury could be fixed to operate more safely and efficiently. *See id.* The defendant's representative "did not undertake to make any changes or repairs to the machine," which resulted in Arguello's injury. *Id.* By comparison, Consolidated's contacts with Utah are based on a contract with a Utah corporation to perform services in Colorado, and Mecham was injured while performing the essential terms of the contract. Therefore, Mecham's claim arose out of Consolidated's contacts with this state, and a Utah court may properly exercise specific jurisdiction over Consolidated.

¶ 26 I believe the majority has erred in affirming the trial court's grant of summary judgment to Chase Manhattan Bank, who did not even bother to file a brief in this appeal. A genuine issue of fact exists as to whether Chase's relationship with Landmark Petroleum was more than that of a mere lender. I do not believe, therefore, that the issue of agency can be appropriately resolved on summary judgment. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 314 (Utah 1998) (stating that "the question of whether an agency relationship exists is one of fact").