2003 UT 3

Rosalind CAZARES, as personal representative of the Estate of Rosemary Cosby, Plaintiff and Appellant,

v.

Robert C. COSBY, Annie L. Johnson, Chase Manhattan Mortgage Company, Headlands Mortgage Company, Headlands Home Equity Loan Trust, United Security Financial and John Does 1–10, Defendants and Appellees.

Headlands Mortgage Company and Headlands Home Equity Loan Trust, Third–Party Plaintiffs and Appellants,

v.

Linda Weir and Western Surety Company, Third–Party Defendants and Appellees.

No. 20010599.

Supreme Court of Utah.

Feb. 14, 2003.

John N. Braithwaite, Robert C. Olsen, Salt Lake City, for defendants Linda Weir and Western Surety Co.

WILKINS, Justice:

¶ 1 The plaintiff, Rosalind Cazares ("Cazares"), appeals the trial court's decision to conduct a hearing, pursuant to rule 104 of the Utah Rules of Evidence, to determine the admissibility of handwriting evidence offered to prove forgery of deeds to real property. She also challenges the trial court's grant of defendants' motion to preclude the introduction of that handwriting evidence and the trial court's order of dismissal. Cazares challenges the trial court's decisions as violating her rights under the Utah Constitution, article I, sections 7, 10, and 11. We affirm in part and reverse in part.

### FACTUAL AND PROCEDURAL BACKGROUND

#### I. FACTUAL BACKGROUND

¶ 2 Cazares, in her capacity as the personal representative of the estate of Rosemary Cosby (the "decedent"), sued the various defendants in this case for their roles in an alleged conspiracy to fraudulently obtain title to four parcels of real property owned by the decedent. The properties are all in Salt Lake County and are located on Deer Hollow Drive ("Deer Hollow property"), in the Zion Summit Condominiums ("Zion Summit property"), in the Park Crest Subdivision ("Park Crest property"), and on Libby Way ("Libby Way property"). In her complaint Cazares alleged that the decedent's widower, Robert Cosby ("Cosby"), and another defendant, Annie Johnson ("Johnson"), forged or oversaw the forgery of deeds to the above properties. The other defendants were allegedly aware of or benefitted from the forgeries. These alleged forgeries affect each of the properties.

#### A. Deer Hollow Property

¶ 3 Cazares alleges that signatures of the decedent on deeds to the Deer Hollow property dated November 2, 1994 and August 18, 1995 were forged by or at the direction of Cosby. The November 2, 1994 deed, a quit-

Edward M. Garrett, James D. Garrett, Salt Lake City, for plaintiff.

J. Bruce Reading, Lisa A. Jones, William G. Wilson, Salt Lake City, for defendants Robert C. Cosby, Annie L. Johnson and United Security Financial.

John B. Wilson, Laura S. Scott, Salt Lake City, for defendant Chase Manhattan Mortgage Co.

David E. West, Salt Lake City, for defendants Headlands Mortgage Co. and Headlands Home Equity Loan Trust.

claim deed, purported to transfer the property from the decedent to Cosby and the decedent together as joint tenants. Cazares offers a handwriting expert's opinion that the signature of the decedent on the quitclaim deed was not genuine. A deed of trust was apparently contemporaneously executed on November 2, 1994 by both the decedent and Cosby to secure a loan of $420,000 from United Security Financial ("USF"). Nothing in the complaint challenges this deed. The August 18, 1995 deed of trust was allegedly forged to enable Cosby to borrow $595,000 against the property from another defendant, Chase Manhattan Mortgage Company ("Chase Manhattan"). A subsequent deed of trust was granted by Cosby on May 5, 1997 to yet another defendant, Headlands Mortgage Company, to secure $168,000 borrowed by Cosby. No forgery is alleged on this deed as it is in the name of Cosby alone, having been executed after the decedent's January 1997 death. Each of the deeds on the Deer Hollow property was stamped with a notary's seal and recorded.

¶ 4 In sum, Cazares alleges that two deeds were forged in connection with the Deer Hollow property: the November 2, 1994 quitclaim deed and the August 18, 1995 trust deed. The challenged November 2, 1994 deed was acknowledged by Linda Weir ("Weir"), a notary public. The August 18, 1995 deed was acknowledged by Tarci Eastburn ("Eastburn"), also a notary public. Cazares's complaint seeks to quiet title in the Deer Hollow property against Cosby, Chase Manhattan, Headlands Mortgage Company, and Headlands Home Equity Trust, another defendant.

### B. Zion Summit Property

¶ 5 Cazares alleges that Cosby forged a quitclaim deed and a deed of trust to the Zion Summit property in order to borrow $105,000 from USF. The quitclaim deed, dated December 16, 1996, purportedly conveyed the condominium from the decedent to both Cosby and the decedent "as joint tenants with full rights of survivorship." Cazares again offered the opinion of a handwriting expert as proof of the forgery of this quitclaim deed. A trust deed, dated the same

day, was offered as security for the loan from USF. Both deeds were recorded and bear the acknowledgment of Patricia Tunson ("Tunson"), a notary. Because the two deeds to the Zion Summit property are forgeries, alleges Cazares, title to the property should be quieted in her as the decedent's personal representative.

### C. Park Crest Property

¶ 6 A quitclaim deed to the Park Crest property, dated August 16, 1996, allegedly conveyed the property from the decedent to both Cosby and the decedent "as joint tenants with full rights of survivorship." Cazares's handwriting expert offered his opinion that the decedent's signature on this deed was also a forgery. This deed was acknowledged by Weir and recorded. Cosby has since conveyed the property to Scott Bryce. Cazares does not seek to quiet title to this property but instead alleges fraud and conversion against Cosby on this property.

### D. Libby Way Property

¶ 7 Johnson was accused of forging or overseeing the forgery of a quitclaim deed dated March 25, 1994 on the Libby Way property. The decedent's signature on this deed was also a forgery according to Cazares's handwriting expert. This deed was recorded and bears the acknowledgment of Weir. Johnson later conveyed this property to USF in a deed dated December 12, 1994. Cazares seeks to quiet title in the Libby Way property against Johnson and USF.

## II. PROCEEDINGS BELOW

¶ 8 Before trial, it became apparent that Cazares planned to introduce testimony of lay and expert witnesses regarding the handwriting of the decedent to show forgery of the challenged deeds. To resolve questions of admissibility of handwriting evidence, the trial court conducted a hearing pursuant to Utah Rule of Evidence 104. After the hearing, the court granted a motion in limine to exclude evidence of handwriting to prove forgery holding that no handwriting evidence would be allowed so long as the acknowledging notary was available to testify concerning the deed. The authorities cited by

the court for its ruling were sections 57–2–10 and –14 of the Utah Code (1994), which list types of evidence allowed to prove an instrument affecting real property. The court then offered Cazares an opportunity to challenge the credibility of the notaries to the questioned deeds. At a hearing on May 21, 2001, two of the notaries testified regarding their acknowledgment of the deeds and the court had before it the affidavit of the third notary.

¶ 9 As to the Zion Summit quitclaim deed, Tunson admitted that she had not witnessed the execution of the deed in person, but acknowledged it at the request of the decedent with whom she spoke on the telephone. As to the Deer Hollow, Park Crest, and Libby Way quitclaim deeds, Weir testified that she had acknowledged each deed but could not recall whether the decedent had personally appeared before her to execute the documents or later acknowledged that she had signed them. She testified that both scenarios occurred at various times in her relationship with the decedent. The affidavit of Eastburn, who was the acknowledging notary to deeds to the Deer Hollow property, indicates that she could not specifically recall whether the decedent was personally before her when the deed was executed or whether she merely verified the decedent's signature later.

¶ 10 Finding that Cazares had not discredited the notaries, the court held that Cazares had not overcome the requirements of sections 57–2–10 and –14 and could not introduce handwriting evidence. Without this evidence and with the finding that the notaries' testimony was credible, the court held that Cazares could not meet her burden under Utah Code Ann. section 57–4A–4 (2000) to show that the recorded deeds were forged, and dismissed the case. The trial court's stated reason for dismissing the claims was for "no cause of action."

## ANALYSIS

### I.  STANDARD OF REVIEW

¶ 11 Regarding whether the trial court was permitted to conduct a hearing

pursuant to rule 104 of the Utah Rules of Evidence to determine admissibility of evidence, we inquire whether the trial court abused its discretion. *Morton v. Cont'l Baking Co.,* 938 P.2d 271, 274–75 (Utah 1997) (noting judge's latitude in conducting court business). Because the trial court's order excluding handwriting evidence was based on the interpretation of a statute, that ruling will be reviewed for correctness. *State v. Pena,* 869 P.2d 932, 936 (Utah 1994). Whether the trial court properly dismissed the case for failure to state a claim is a question of law, reviewed for correctness.[1] *Stokes v. Van Wagoner,* 1999 UT 94, ¶ 6, 987 P.2d 602. Because of our disposition of the above issues, it is not necessary to reach Cazares's constitutional challenges.

### II.  104 HEARING

¶ 12 The text of rule 104 of the Utah Rules of Evidence explicitly provides that the court will determine "[p]reliminary questions concerning . . . the admissibility of evidence." Utah R. Evid. 104(a). The discretion to do so rests solely with the trial court. Thus, the court's decision in this case to hold a hearing to determine the admissibility of handwriting evidence was not an abuse of discretion.

### III.  TRIAL COURT'S DISMISSAL

¶ 13 The trial court's dismissal in this case was improper. As we note above, the trial court apparently premised its dismissal on rule 12(b)(6) of the Utah Rules of Civil Procedure. "[W]hen 'determining whether a trial court properly dismissed an action under rule 12(b)(6), we assume that the factual allegations in the complaint are true and we draw all reasonable inferences in the light most favorable to the plaintiff.' " *Valley Colour, Inc. v. Beuchert Builders, Inc.,* 944 P.2d 361, 362 (Utah 1997) (internal citation omitted). Doing so, it is apparent that the dismissal in this case was not justified.

1. Based on the language of the trial court's order, we assume the dismissal was premised on rule 12(b)(6) of the Utah Rules of Civil Procedure. At oral argument, however, counsel for

Cosby, Johnson, and USF conceded that he could find no rule that would support the trial court's dismissal in this case.

¶ 14 A rule 12(b)(6) dismissal is merely a recognition by a trial court that a plaintiff's claim for relief is formally deficient. *Id.* at 362. Cazares's case was improperly dismissed because her complaint was sufficient, alleging as it did that the challenged deeds were forgeries. The defendants below never argued that the complaint was inadequate.

¶ 15 Instead of reviewing "the formal sufficiency of the claim for relief," *id.*, the trial court in this case apparently applied the findings of fact from the evidentiary hearing to what was to be the ultimate issue at trial and concluded that Cazares could not prevail. However, the evidentiary hearing was for the limited purpose of determining the admissibility of evidence, not the trial of the case. Rather than viewing the factual allegations of the complaint in the light most favorable to the plaintiff, the trial court applied its own findings of fact from the evidentiary hearing to resolve any doubts about the evidence. One court discussing judicial findings of fact in pretrial evidentiary hearings has noted that although "[t]he preliminary question ... may also coincide with an ultimate question of fact for the jury ... the trial judge is ruling on the admissibility of evidence, not [the ultimate outcome of the trial]." *United States v. Enright,* 579 F.2d 980, 985 (6th Cir.1978). In this case the trial court inappropriately relied on factual determinations from the evidentiary hearing, and we reverse.

## IV.   EXCLUSION OF HANDWRITING EVIDENCE

¶ 16 We turn now to the trial court's ruling that evidence of the decedent's handwriting was inadmissible to show forgery where the deeds in question had been acknowledged by a notary. We reverse the trial court's broad ruling that the notaries in this case were *all* subscribing witnesses.

### A.   *Historical Background of Subscribing Witness Statute*

¶ 17 Section 57–2–10 of the Utah Code establishes a hierarchy of admissible evidence for proving the execution of an instrument affecting real property. Utah Code Ann. § 57–2–10 (2000). It requires that a subscribing witness, if available, testify to establish proof of execution. In the event a subscribing witness is unavailable, it allows the use of handwriting evidence to prove execution. *Id.* § 57–2–10(2). This hierarchy is reinforced by section 57–2–14, which prohibits handwriting evidence when a subscribing witness is available. *Id.* § 57–2–14. The order of proof found in section 57–2–10 has been essentially untouched for over 125 years. *Compare* 1876 Utah Laws 638, *with* Utah Code Ann. § 57–2–10 (2000).

¶ 18 Despite the stability of sections 57–2–10 and –14, the requirements for a validly executed conveyance of real estate have changed. In 1876, a valid conveyance required the signatures of the grantor or an agent and "one or more credible witnesses." 1876 Utah Laws 617. This requirement had disappeared by 1888. 1888 Utah Laws 3916. Although the requirement for a subscribing witness to deeds to real property has disappeared, subscribing witnesses, where present, remain the preferred method of proving due execution of a deed.

### B.   *Modern Application of Subscribing Witness Statute*

¶ 19 The hierarchy of proof favoring the testimony of subscribing witnesses remains in effect and we must enforce it. This is because this court assumes that the legislature, in repealing the requirement that a subscribing witness sign every deed for it to be valid, yet retaining the provision now found in section 57–2–10, was mindful of the retained provision and its related subject matter and wished it to be given effect. *See Murray City v. Hall,* 663 P.2d 1314, 1318 (Utah 1983) (citing 2A C. Sands, *Sutherland Statutory Construction* § 51.02 (4th ed.1973) for the proposition that legislatures know of statutes of related subject matter and have them in mind when enacting new statutes).

¶ 20 Accordingly, we hold that when a notary acknowledges the execution of a deed, having personally witnessed that execution, the notary qualifies as a subscribing witness within the meaning of section 57–2–10. We reverse the ruling of the trial court

to the extent it prohibited introduction of handwriting evidence on deeds acknowledged by a notary who did not contemporaneously witness the execution of the deed. We remand on those deeds where it is not apparent in the record whether the acknowledging notary personally witnessed the execution of the questioned deed. *See infra* Part IV.C.

¶ 21 Our holding is in accord with the definition of subscribing witness found in *Black's Law Dictionary* and with good public policy. A subscribing witness is "[o]ne who witnesses the signatures on an instrument and signs at the end of the instrument to that effect." *Black's Law Dictionary* 1597 (7th ed.1999). Requiring a notary to personally witness the execution of an instrument for her acknowledgment to be given the weight of a subscribing witness's signature reflects both the desire to effectuate, in a modern context, the strong presumption of proof given subscribing witnesses' signatures and the need to guard against the potential for mischief that follows from granting that same presumption to a notarial acknowledgment of a previously executed instrument.

### C. Application of Subscribing Witness Statute to Challenged Deeds

¶ 22 For purposes of today's holding, evaluation of Cazares's argument for the introduction of handwriting evidence to prove forgery of the challenged deeds must begin and end with determining whether the acknowledging notaries of each deed qualify as subscribing witnesses.

¶ 23 Tunson, the notary to both challenged deeds on the Zion Summit property, admitted that her acknowledgments followed a telephonic request by the decedent, not Tunson's presence during execution. Accordingly, evidence of the decedent's handwriting on the December 16, 1996 deeds to the Zion Summit property, if otherwise admissible, cannot be excluded under sections 57–2–10 and –14.

¶ 24 Cazares has challenged four other deeds as forgeries: the November 2, 1994 quitclaim deed and the August 18, 1995 trust deed to the Deer Hollow property, the March 25, 1994 quitclaim deed to the Libby

Way property, and the August 16, 1996 quitclaim deed to the Park Crest property. All but the August 18, 1995 deed on the Deer Hollow property were acknowledged by Weir. The trial court made no finding as to whether the three challenged deeds acknowledged by Weir were executed in her presence. As to these three deeds, therefore, we remand for the trial court to make this determination and proceed accordingly. Likewise, no finding was made regarding whether the execution of the August 18, 1995 deed was personally witnessed by Tarci Eastburn, the acknowledging notary; we remand that issue for the trial court's resolution.

### CONCLUSION

¶ 25 We agree with the trial court that notaries public who acknowledge the execution of deeds to real property may be subscribing witnesses within the meaning of sections 57–2–10 and –14 of the Utah Code. However, we reverse the trial court's determination that Patricia Tunson, the acknowledging notary to the Zion Summit deeds, qualifies as a subscribing witness because we hold that a notary may only be a subscribing witness to a deed if she personally witnesses its execution, which Tunson did not. As the record is devoid of a finding or sufficient evidence to determine whether the notaries to the remaining deeds personally witnessed their execution by the decedent, we remand to the trial court for further proceedings consistent with this opinion.

¶ 26 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice RUSSON, and Judge GREENWOOD concur in Justice WILKINS' opinion.

¶ 27 Justice HOWE did not participate herein; Court of Appeals Judge PAMELA T. GREENWOOD sat.