· 2007 UT App 225

**POHL, INC. OF AMERICA,**
Plaintiff and Appellant,

v.

**Ron WEBELHUTH; Bret Miller; Dennis Miller; Industrial Sheet Metal Erectors, Inc.; and John Does I through X, Defendants and Appellees.**

No. 20060409–CA.

Court of Appeals of Utah.

June 28, 2007.

Ronald F. Price and David W. Scofield, Salt Lake City, for Appellant.

Robert F. Babcock and Cody W. Wilson, Salt Lake City, and Steven M. Cockriel, St. Louis, Missouri, for Appellees.

Before BENCH, P.J., DAVIS and ORME, JJ.

## OPINION

DAVIS, Judge:

¶1 Plaintiff Pohl, Inc. of America (Pohl) appeals the trial court's grant of Defendants' motion to dismiss for lack of personal jurisdiction. We affirm.

## BACKGROUND

¶2 Pohl, a multinational corporation with its United States offices in Utah, designs and manufactures custom metal panels for buildings. Pohl entered into a contract with T.A.B. Company, Inc. (TAB), a Missouri corporation, under which Pohl was to manufacture a panel system for the new University of Missouri at St. Louis Performing Arts Center (the Project). TAB had a contract with K.C.I. Construction Company, Inc. (KCI), a Missouri corporation and the general contractor for the Project, under which TAB agreed to furnish and install the Pohl panel system. Defendant Ron Webelhuth acted as KCI's project manager for the Project. TAB also had a contract with Defendant Industrial Sheet Metal Erectors, Inc. (ISME), a Missouri corporation, under which ISME was responsible for the installation of the Pohl panel system. Defendant Bret Miller, who initially contacted Pohl, worked as ISME's project manager, and Defendant Dennis Miller is the president of ISME. Thus, under TAB's contract with KCI, TAB was responsible for the construction and installation of a Pohl panel system; under TAB's contract with Pohl, Pohl was responsible for the manufacture of the panel system; and under TAB's contract with ISME, ISME was responsible for the installation of the Pohl panel system.

¶3 Pohl began manufacturing the panel system required by TAB and KCI. Pohl worked almost exclusively with TAB, but TAB did direct Pohl to communicate directly with Bret Miller of ISME regarding the Project's specifications and scheduling deadlines. After several months, KCI came under pressure from the Project's owner to deliver the panel system. Pohl warned TAB, ISME, and Bret Miller about its "available production windows" and that it would require "substantial lead-time between verifying field dimensions and delivery of panels." Nonetheless, on February 10, 2003, Webelhuth faxed a letter to TAB and Bret Miller of ISME informing TAB that the panel system would need to be delivered no later than the end of February 2003. ISME immediately mailed this request to Pohl. Pohl responded by letter, stating that "[ISME] has no contract, of any kind, with Pohl. Indeed, Pohl has no existing contract, with any company, that requires it to provide any product or service of any kind, on any date." Webelhuth then met with Bret Miller to discuss alternatives to the Pohl panel system, and ultimately decided to suggest a different panel system to the owner. As a result, on February 17, 2003, Webelhuth hand-delivered to TAB a letter stating that if the Pohl panels were not received by February 19, 2003, KCI would terminate TAB's contract. TAB immediately drafted a similar letter to Pohl and faxed it to Pohl. When the Pohl panel systems did not arrive on February 19, KCI terminated TAB's contract, and TAB then terminated its contract with Pohl.

¶4 In a separate action, Pohl sued TAB for breach of contract but later agreed to dismiss the case without prejudice. Pohl then brought the present tort action in the Third District Court against Defendants Webelhuth, ISME, Bret Miller, and Dennis Miller. The complaint alleged intentional interference with contract, intentional interference with prospective economic relations, and civil conspiracy. The trial court granted Defendants' motion to dismiss for lack of personal jurisdiction. Pohl now appeals.

## ISSUE AND STANDARD OF REVIEW

¶5 Pohl claims that the trial court erred by dismissing its claims against Defendants for lack of personal jurisdiction. "Where a pretrial jurisdictional decision has been made on documentary evidence only, an appeal from that decision presents only legal questions that are reviewed for correctness." *Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1121 (Utah 1992); *see*

also *Mecham v. Consolidated Oil & Transp., Inc.,* 2002 UT App 251, ¶ 9, 53 P.3d 479.

## ANALYSIS

¶ 6 Pohl argues that the trial court had personal jurisdiction over Defendants because their conduct fell within Utah's long-arm statute and because "federal due process is not offended by allowing Pohl a Utah forum." To establish specific personal jurisdiction [1] over Defendants, Pohl must demonstrate that "(1) the Utah long-arm statute extends to [Defendants'] acts or contacts, (2) [Pohl's] claim arises out of those acts or contacts, and (3) the exercise of jurisdiction satisfies [Defendants'] right to due process under the United States Constitution." *Fenn v. Mleads Enters., Inc.,* 2006 UT 8, ¶ 8, 137 P.3d 706; *see also Phone Directories Co. v. Henderson,* 2000 UT 64, ¶ 12, 8 P.3d 256.

### I. The Utah Long–Arm Statute

¶ 7 Pohl claims that the trial court had jurisdiction over Defendants because Defendants' conduct was within the acts enumerated in Utah's long-arm statute. The statute provides:

> Any person ... whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself ... to the jurisdiction of the courts of this state as to any claim arising out of or related to:
>
> (1) the transaction of any business within this state; [or]
>
> ....
>
> (3) the causing of any injury within this state whether tortious or by breach of warranty[.]

Utah Code Ann. § 78–27–24 (2002). Further, jurisdiction over nonresidents is limited to those claims arising from acts enumerated in the judicial code. *See id.* § 78–27–26 (2002).

¶ 8 Respecting Defendants' transaction of business in Utah, Pohl claims that Defendants' contractual obligations required them to work directly and indirectly with Pohl in Utah. Further, Pohl asserts that Defendants "purposefully directed" business communications to Pohl in Utah and that even though Defendants transacted business remotely, they nonetheless transacted business in Utah. *See, e.g., SII MegaDiamond, Inc. v. American Superabrasives Corp.,* 969 P.2d 430, 434–35 (Utah 1998). The "transaction of business" within Utah is defined as "activities of a nonresident person, his agents, or representatives in this state which affect persons or businesses within the state of Utah." Utah Code Ann. § 78–27–23 (2002). In addition, as Pohl correctly points out, " '[s]o long as a commercial actor's efforts are "purposefully directed" toward residents of another State, [courts] have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.' " *SII MegaDiamond,* 969 P.2d at 435 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

¶ 9 Defendants argue that they did not transact business in Utah because, under the statutory definition, at least some activities must occur within Utah. We agree. Utah Code section 78–27–23(2) plainly states that "[t]he words 'transaction of business within this state' mean activities of a nonresident person ... *in this state* which affect persons or businesses within the state of Utah." Utah Code Ann. § 78–27–23(2) (emphasis added). Because Defendants have not physically conducted business within Utah, Pohl must demonstrate that Defendants transacted business in Utah by purposefully directing mail or wire communications to Pohl in Utah. *See SII MegaDiamond,* 969 P.2d at 434–35.

¶ 10 The trial court stated in its memorandum decision that the only communication received by Pohl that supported Pohl's tort claims was TAB's February 17 letter, which demanded delivery of the panel system by February 19. The trial court noted that as for Defendants, however, "the only actions or conduct by them that form the basis for

---

1. Although the trial court ruled that it did not have general personal jurisdiction over Defendants, *see generally Ho v. Jim's Enters., Inc.,* 2001 UT 63, ¶¶ 7–8, 29 P.3d 633, the parties do not address general personal jurisdiction on appeal. We therefore focus exclusively on specific personal jurisdiction.

[Pohl's] claims were performed exclusively in the state of Missouri—with persons or entities located in the state of Missouri." In other words, the trial court concluded that the only communication relevant to Pohl's claims against Defendants was the letter Webelhuth hand-delivered to TAB in St. Louis, Missouri, which Defendants did not themselves send to Pohl.[2] Moreover, in a letter from Pohl to ISME, Pohl's counsel stated that ISME "ha[d] no contract, of any kind, with Pohl." These facts are patently different than the facts in *SII MegaDiamond*, where the Utah Supreme Court ruled that the defendant had purposefully directed its efforts toward Utah residents because it entered into a distribution agreement with a Utah company and "submitted continuous orders for a product manufactured in Utah." *Id.* Thus, Defendants did not transact business in Utah, nor did they purposefully direct business communications to Pohl in Utah.

■ ¶ 11 Next, Pohl argues that the Utah long-arm statute is satisfied because Pohl's claims arise out of Defendants' tortious acts, which injured Pohl in Utah. *See* Utah Code Ann. § 78–27–24(3) (stating that Utah has jurisdiction over any claim arising out of "the causing of any injury within this state whether tortious or by breach of warranty"). Specifically, Pohl claims that Defendants deliberately interfered with its contract with TAB. However, the "causing [of] financial injury to a Utah business 'has been flatly rejected by the Utah courts as a basis for exercising specific personal jurisdiction.'" *Patriot Sys., Inc. v. C–Cubed Corp.*, 21 F.Supp.2d 1318, 1321 (D.Utah 1998) (mem.) (quoting *Harnischfeger Eng'rs, Inc. v. Uniflo Conveyor, Inc.*, 883 F.Supp. 608, 613 (D.Utah 1995)). Therefore, because Pohl alleges only that Defendants' business torts caused it financial injury, the Utah long-arm statute is not satisfied.

¶ 12 Because Pohl has not shown that any of Defendants' acts fell within the Utah long-arm statute, either by tortious conduct or transaction of business, it follows that Pohl's

claims do not "arise[ ] out of ... those acts or contacts" with Utah. *Fenn v. Mleads Enters., Inc.*, 2006 UT 8, ¶ 8, 137 P.3d 706. Moreover, the only communications between Pohl and Defendants were made in furtherance of Pohl's contract with TAB and did not involve the alleged tortious conduct. Pohl's tort claims certainly do not arise out of the communications between Pohl and Defendants regarding the specifications of the Project. As a result, the trial court properly dismissed Pohl's claims for lack of personal jurisdiction. *See* Utah Code Ann. § 78–27–24.

## II. Fourteenth Amendment Due Process

■ ¶ 13 Although Defendants' activities are outside the reach of our long-arm statute, federal due process also precludes jurisdiction here. Under federal due process, we "cannot exercise personal jurisdiction against a defendant unless there exist 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *MFS Series Trust III v. Grainger*, 2004 UT 61, ¶ 10, 96 P.3d 927 (alteration in original) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

¶ 14 Courts have laid out several factors for determining whether a defendant has sufficient minimum contacts with Utah. First, a "defendant must have purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (alteration in original) (quotations and citation omitted). Second, Utah courts have "personal jurisdiction only where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state." *Id.* (quotations and citation omitted). Third, "[w]e exercise specific personal jurisdiction only on claims arising out of [the] defendant's forum-state activity, and the contact between the

---

2. We are aware that there were direct communications between Pohl and Bret Miller of ISME regarding the specifications and delivery schedule of the panels for the Project. These communications, however, were made at Pohl's request

and related to Pohl's contract with TAB. Thus, the direct communications between Pohl and Defendants do not satisfy the long-arm statute as against Defendants.

defendant and the forum state must be such that the defendant should reasonably anticipate being haled into court there." *Id.* (quotations and citation omitted). Fourth, "the determination of whether Utah can justify asserting jurisdiction over defendants hinges on the balancing of fairness to the parties and the interests of the State in assuming jurisdiction." *Id.* (quotations and citation omitted).

¶ 15 We conclude that the trial court properly determined that "Defendants ... lack the 'minimum contacts' required to satisfy the due process requirements of specific personal jurisdiction." First, Defendants have not "purposefully avail[ed]" themselves of the benefits of conducting business in Utah. *Id.* (quotations and citation omitted). Defendants are not engaged in any significant business activities within Utah, nor have they created any continuous obligations in Utah. Second, Defendants' actions have not created a "substantial connection" with Utah. *Id.* In fact, Defendants worked almost exclusively with TAB in St. Louis, Missouri, and it was TAB that contracted with Pohl. The communications between Bret Miller of ISME and Pohl were at the direction of TAB, and were made in furtherance of Pohl's contract with TAB. Also, Pohl admitted that it has no contract with ISME. Third, Defendants' contacts were insufficient to cause them to "reasonably anticipate being haled into court" in Utah. *Id.* (quotations and citation omitted). Moreover, although Defendants may have known that their actions would affect Pohl in Utah, that very impact— i.e., the financial injury alleged by Pohl—has been deemed inadequate for jurisdiction under the Utah long-arm statute, *see Patriot Sys.,* 21 F.Supp.2d at 1321. Finally, the balance between fairness to Defendants and the State of Utah's interest in providing Pohl a forum weighs in favor of Defendants. Thus, Defendants do not have sufficient minimum contacts in Utah.

¶ 16 In addition to the need for minimum contacts by Defendants, "the exercise of jurisdiction must be fair and reasonable," otherwise it will violate "the traditional notions of fair play and substantial justice." *Fenn,* 2006 UT 8 at ¶ 23, 137 P.3d 706 (quotations and citation omitted). Defendants are individuals and a business from St. Louis, Missouri, who worked on a construction project in Missouri. All of Defendants' activities occurred in Missouri and their records and witnesses are located in Missouri. Pohl, on the other hand, is a multinational corporation that does business all over the world. We conclude that, under the facts and circumstances of this case, asserting jurisdiction over Defendants would not be "fair and reasonable." *Id.* As such, the trial court correctly ruled that asserting jurisdiction over Defendants would violate federal due process.

## CONCLUSION

¶ 17 The trial court's dismissal of Pohl's complaint for lack of personal jurisdiction was proper. Defendants' actions did not fulfill Utah's long-arm statute, and in any event, assertion of jurisdiction over Defendants would violate federal due process. We therefore affirm the trial court's grant of Defendants' motion to dismiss for lack of personal jurisdiction.

¶ 18 I CONCUR: RUSSELL W. BENCH, Presiding Judge.

ORME, Judge (concurring in part and dissenting in part):

¶ 19 With one exception,[1] I concur in Part I of the main opinion, but I must dissent from Part II. It is simply not proper to reach the constitutional issue in this case because we have concluded that our long-arm statute does not confer jurisdiction over Plaintiff's claims.

¶ 20 Under our jurisprudence, if a case may be resolved on statutory grounds, we are obliged to resist the temptation to render unnecessary advisory opinions about constitutional issues, even if they interest us.

---

1. I fail to see the "[m]oreover" significance of a letter from Pohl's counsel stating that ISME "ha[d] no contract, of any kind, with Pohl." Main Opinion, ¶ 10. After all, Pohl has consistently acknowledged it had no contract with ISME and, as the majority recognizes, is suing ISME only in tort. *See* Main Opinion, ¶¶ 3–4.

*See, e.g., In re Estate of Cosby,* 2003 UT 3, ¶ 11, 65 P.3d 1184 (stating that due to the court's disposition of two other issues presented by the parties, one involving a rule of evidence, "it [was] not necessary to reach [the appellant's] constitutional challenges"); *Hoyle v. Monson,* 606 P.2d 240, 242 (Utah 1980) ("[C]ourts do not busy themselves with advisory opinions, nor [do they] exercise the delicate power of pronouncing a statute unconstitutional in abstract, hypothetical, or otherwise moot cases.... [A] constitutional question is not to be reached if the merits of the case ... may be fairly determined on other than constitutional issues."); *Estes v. Talbot,* 597 P.2d 1324, 1326 (Utah 1979) ("It is not necessary ... to reach the important constitutional questions of just which or whether all State officers are subject to impeachment.... The fact is that under no reasonable construction of the statutes in question could this action be maintained."); *Heathman v. Giles,* 13 Utah 2d 368, 374 P.2d 839, 841 (1962) ("In regard to the issue of constitutionality: it is generally held, and we think properly so, that after having determined that a statute does not apply to the case in hand, the court will not go beyond and consider its constitutionality.") (footnote omitted); *Whitcher v. Bonneville Irrigation Dist.,* 69 Utah 510, 256 P. 785, 788 (1927) (discussing that "it [was] not necessary to consider or determine the questions ... respecting the constitutionality of the provisions" because "the assessments made and taxes levied ... [were] void and of no effect" for a different reason); *Holm v. Smilowitz,* 840 P.2d 157, 169–70 (Utah Ct.App.1992) (concurring opinion joined in by majority of panel) (invoking the institutional proscription against reaching constitutional issues unnecessarily and noting that because "the commissioner's actions were not even authorized by statute or rule," there was "no need to opine about the constitutional implications of such actions").

¶ 21 No exception to this sound policy has been recognized for selective use in long-arm cases. On the contrary, the general rule has been embraced and consistently followed by the appellate courts of this state:

Generally, whether a state can exercise specific personal jurisdiction over a non-resident defendant is determined by two factors: the breadth of the forum state's jurisdictional statute and the due process limitations on jurisdiction imposed by the Fourteenth Amendment to the United States Constitution. *If the relevant state statute does not permit jurisdiction, then the inquiry is ended;* if it does, then the question is whether the statute's reach comports with due process.

*Arguello v. Industrial Woodworking Mach. Co.,* 838 P.2d 1120, 1122 (Utah 1992) (citations omitted) (emphasis added). *Accord Parry v. Ernst Home Ctr. Corp.,* 779 P.2d 659, 661 (Utah 1989); *Bradford v. Nagle,* 763 P.2d 791, 793 (Utah 1988). We have demonstrated in Part I of the main opinion that the applicable statute does not permit jurisdiction. Thus, our "inquiry is ended," *Arguello,* 838 P.2d at 1122—or should be.

¶ 22 It is true that a number of Utah cases have discussed the Due Process implications of the exercise of long-arm jurisdiction after dealing with the statute, and it is apparently this familiar pattern that explains my colleagues' gratuitous foray into constitutional law in this case. However, unlike in this case, in every one of those other cases the appellate court reached the Due Process issue only after it first concluded or assumed that the statute itself would confer jurisdiction. *See, e.g., Fenn v. Mleads Enters., Inc.,* 2006 UT 8, ¶ 9, 137 P.3d 706 ("Both parties agree that the Utah long-arm statute extends to [the defendant]'s actions in this case and that the [p]laintiff's claim arises out of those acts or contacts. Hence, we granted certiorari only to review the due process analysis of the court of appeals[.]"); *Starways, Inc. v. Curry,* 1999 UT 50, ¶¶ 7–8, 980 P.2d 204 ("[W]e conclude that subparagraph (3) of the long-arm statute encompasses the defendants' acts as alleged by the uncontroverted portions of [the plaintiff's] complaint. We next consider whether holding the defendants subject to this state's jurisdiction accords with due process."); *Arguello,* 838 P.2d at 1122 (assuming "subparagraph (1) or (3) of the long-arm statute will be satisfied" before moving to consider Due Process implications of exercise of jurisdiction pursuant to those statutory provisions). In contrast, if the ap-

peal can be decided on straightforward statutory grounds, the theoretical Due Process implications of the exercise of jurisdiction are not broached.[2] *See, e.g., Dahnken, Inc. v. Marshinsky,* 580 P.2d 596, 597–98 (Utah 1978); *White v. Arthur Murray, Inc.,* 549 P.2d 439, 440–41 (Utah), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976); *Mack Fin. Corp. v. Nevada Motor Rentals, Inc.,* 529 P.2d 429, 430–31 (Utah 1974).

¶ 23 While I agree that the long-arm statute does not confer jurisdiction in this case, I do not join in the wholly unnecessary advisory opinion on constitutional law, given that this case can properly be resolved on statutory grounds.

---

**2.** I can find only a single Utah appellate opinion where both statutory and constitutional analysis are treated by the court in a case where, as in our case, the statute was held not to confer jurisdiction. *See Kocha v. Gibson Prods. Co.,* 535 P.2d 680 (Utah 1975). In this six paragraph opinion authored by Justice Tuckett, the Utah Supreme Court's relevant analysis was confined to a single sentence: "There is no showing of 'significant minimal contacts' in this State which would satisfy the due process clause of the federal constitution nor 'transaction of business within this state' as defined by Section 78–27–23, U.C.A.1953." *Id.* at 681 (footnotes omitted).